GRAham, Judge,
delivered the opinion of the court:
The plaintiffs here seek to recover the sum of $63,752.52 as prospective profits by reason of an alleged breach of a contract due to the cancellation of same by the defendant. The contract was dated June 7, 1917, and expired December 31, 1917. It provided for the manufacture and delivery of 50,000 cotton service coats, and 85,000 woolen service coats. The cotton coats were to be delivered, 10,000 during July, 20,000 during August, and 20,000 during September. The woolen coats were to be delivered, 15,000 during September, 20,000 during October, 25,000 during November, and 25,000 during December. The defendant was to furnish the cloth for both kinds of coats, to be delivered f. o. b. Cleveland, Ohio. The contract, in terms, fixes no time for delivery. In addition to the price of $0,847 for each cotton coat manufactured, delivered, and accepted, and $1,749 for each woolen coat, the plaintiffs were to have the rags and clippings provided the Government did not decide to purchase them at a price to be determined by the authorities of the Department of Commerce. The Government did not purchase the rags and clippings, and the plaintiffs retained them.
The Government, as stated, was to furnish the cloth; the plaintiffs were to furnish all other things necessary to turn out the completed garments, including braid, labor, etc. It is admitted that there were 250 cotton coats undelivered at the time the company ceased operations, between the 1st and 15th of February, 1918, and that only 11,050 woolen coats had been manufactured and delivered at that time.
The theory upon which plaintiffs seek to recover is that they were delayed in commencing work by the failure of the defendant to furnish the cloth required for the manufacture of the cotton coats, which, under the contract, it was obligated to furnish. There is no claim that there was delay in delivery of the cloth for the woolen coats, the manufacture of which was not to commence until the first of September. The delay complained of was the failure of the *581 Government to deliver any cloth for the manufacture of the cotton coats until the latter part of July or the first of August.
Plaintiffs claim that they were ready to commence operations in the early part of July, with the necessary equipment, supplies, and force of workmen; that by reason of the delay and the nonemployment of their workmen, the latter drifted away and sought other employment so that when the cloth began to arrive during the latter part of July and the first of August their organization was so crippled that they could not proceed with the work as they had prepared to do and were unable to procure the needed employes; that this situation had a continuing effect, and accounted for their failure to manufacture and deliver the coats in the quantities and at the time fixed in the contract; and that for this reason the Government was not justified in cancel-ling the contract on account of delay and unsatisfactory conditions of production and delivery, as these circumstances had been brought about by the Government’s failure to deliver the cloth promptly.
As early as September 6, just as plaintiffs were beginniEg the manufacture of the woolen coats, which were by far the largest part of the contract both as to volume and amount of money involved, they asked to have their contract cancelled and the whole contract for the woolen coats transferred to someone else, for the reason that their manager, who was taking care of the contract for them, had proved inefficient and incapable of handling it, and they offered to transfer the materials purchased, and which under the contract they were called upon to purchase, to the defendant at cost price. Whereupon, on September 11, the depot quartermaster at Chicago, to whom the manufactured goods were to be delivered, recommended the cancellation of the contract, stating that the plaintiffs had never been engaged in the manufacture of anything but ladies’ shirt waists and had not shown ability to manufacture men’s garments, and that the contract should be transferred to the Bloch Uniform Co., of Cleveland, who already had a contract for overcoats and were showing excellent progress and evident ability to serve the interests of the Government.
*582 On October 8 the depot quartermaster at Philadelphia wrote to the depot quartermaster at Chicago, saying that if the plaintiffs wished the contract cancelled as to the woolen coats the Government would do so, but that the latter would be unwilling to agree to take the trimmings off plaintiffs’ hands. It appears that plaintiffs later made amicable arrangements with the Bloch Uniform Co. to take these trimmings off their hands.
On December 18, owing to the default of the plaintiffs in delivering materials at the times and in quantities fixed in the contract, the defendant sent a representative to Cleveland to look into the situation. Pie had a conference with several members of the plaintiffs’ company. He was informed that they would be glad! to be released from their obligations on the woolen coat part of their contract, among other reasons assigning S. D. Guggenheim’s ill health, their lack of proper equipment and experience, and that it was a costly venture and they were losing money.
Defendant’s representative reported this to his superior and recommended that the contract be transferred to the Bloch Uniform Company, with whom, as above stated, the Guggenheims afterwards made amicable arrangements for taking off their hands the materials they had purchased for completing the contract.
On December 22 the same representative of the defendant was instructed to confer with the Guggenheim Company with a view to having them complete the.garments already cut. The instructions were carried out and the representative sent the following communitíation to his superior: “ * * * stopped all cutting. Guggenheim will complete all in work and cut. Bloch will be in Washington December 28.”
On January 8, 1918, the defendant wrote a letter to the plaintiff company notifying them that that portion of the contract pertaining to the manufacture of the 85,000 woolen coats was cancelled except garments- then cut, which were to be completed by the company, and directing them to turn over the materials on hand belonging to the Government to the Bloch Unifonm Co. Thereupon, without protest or objection, the plaintiff company turned over the materials on *583 hand to the Bloch Company, completed the manufacture of the cut garments, and were paid the contract price for all garments manufactured and delivered, both cotton and woolen.
Plaintiffs never presented a claim to the Claims Board of the War Department in connection with the matter. It does appear that they presented a claim, the time is not shown, to the Auditor of the War Department, who refused to pay it, and some time later, when, it is not shown, they presented a claim to the Comptroller of the Treasury, payment of which was refused. On May 15, 1922, more than four years from the date of the cancellation of the contract, they filed their petition in this court.
The court has found that there was no satisfactory proof that the delay in furnishing material for the cotton coats caused the delay in the manufacture and delivery of the woolen coats, and therefore the delay in the manufacture and delivery of the woolen coats was not due to any neglect or default upon the part of the defendant. As there can be no question that there was upon the part of the plaintiffs delay and failure to perform in accordance with the requirements of the contract, we are left with the single question whether under all the circumstances the Government had a right to cancel the contract and secure its performance by a third party.
This is a right that a person has under the law of contracts, where the other party has unquestionably failed of performance. But, aside from this, the contract itself provides that “ in case of the failure of the contractor to perform any part of the contract the party of the first part or his successor shall have the right to supply the deficiency by procurement in open market or otherwise * * * at the expense of the contractor; and in case the failure should occur prior to the time fixed for performance of all parts of the contract, the right is hereby reserved to the United States to elect whether the contractor shall be permitted to continue the performance as to such remaining part * * * or whether the entire unperformed part shall be procured at the expense of the contractor.”
*584 Under this provision of the contract, and under the circumstances recited, the defendant was justified in canceling the contract, the, plantiffs being admittedly in default by their failure to perform, and not having shown that their default was due to any fault on the part of the defendant.
It is for the plaintiffs to make out their case clearly and satisfactorily. The court is not called upon, and it will not undertake, to balance the delinquencies of the parties to a suit, and add and subtract to reach a speculative result. Plaintiffs’ contract called for performance. This they failed to furnish, and, under the provisions of the contract, in such a situation the defendant could terminate the contract and transfer it for completion to a third person, which it did. In doing so it was within its rights and committed no breach of the contract. This is sufficient to determine the case. However, under the facts it might well be held that the plaintiffs had consented to the cancellation — more than that, had desired it. This is borne out by their request for cancellation, their inefficient management and loss of money on the contract, as well as their failure to protest, their voluntary transfer of the materials to others, the completion by plaintiffs of the cut garments, their acceptance without protest of the payment made by the Government of the contract price.
In our view of the case it is unnecessary to pass upon the question whether under paragraph 8 of the contract the defendant had an absolute right to cancel upon the failure of the plaintiffs to perform. Nor is it necessary to consider, on the question of the delay in delivery by the defendant, the fact that the contract in terms fixed no time for delivery of the cloth by the defendant, or the further question, whether the plaintiffs did not acquiesce in the cancellation or did not in effect negotiate themselves out of their contract.
We are of opinion that the defendant was within its rights in terminating the contract, and that the plaintiffs have already been paid what they were legally entitled to under the circumstances.
The petition should be dismissed and it is so ordered.
Hat, Judge; DowNet, Judge; Booth, Judge; and Campbell, Chief Justice, concur.